UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE
No: 3:08-cv-229

| | | |
|---|---|---|
| CONSTANCE SPINOZZI, on behalf of | : | |
| Herself and all others similarly situated, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | **COMPLAINT** |
| LENDINGTREE, LLC | : | **(Jury Trial Demanded)** |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## CLASS ACTION COMPLAINT

Now comes Constance Spinozzi ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, and in support of the Class Action Complaint, states as follows:

## INTRODUCTION

1.      This is a consumer class action lawsuit brought by Plaintiff Constance Spinozzi, on behalf of herself and all others similarly situated (the "Class" or "Class Members") throughout the United States whose private personal information including Social Security number, income and employment information, name, address, email address, and/or phone number was intentionally and unlawfully sold to third parties by Defendant LendingTree, LLC ("Defendant") in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. ("FCRA")

1

Case 3:08-cv-00229-FDW-DCK   Document 1   Filed 05/15/08   Page 1 of 24

and the common law. Defendant willfully or recklessly failed to limit the furnishing of private consumer information to the permissible purposes outlined under the FCRA. As a result, certain of Defendant's employees and ex-employees accessed Class Members' consumer information and sold it to third parties without the consent of Class Members. Defendant failed to prevent or detect the ongoing unauthorized activity, which occurred for more than a year from October of 2006 until early 2008.

2.      Defendant's actions constitute violations of the FCRA as well as common law negligence and breach of implied contract.

3.      Plaintiff and the Class seek damages suffered as a result of Defendant's practices, including but not limited to statutory damages, compensatory damages, and injunctive relief.

## PARTIES AND JURISDICTION

4.      Plaintiff Constance Spinozzi is a resident of Pennsylvania.

5.      Defendant LendingTree, LLC is a Delaware limited liability company with its headquarters located at 1115 Rushmore Drive, Charlotte, NC 28277. Defendant provides financial information services throughout the United States, including engaging in the practice of assembling and evaluating consumer credit information online for the purpose of furnishing consumer credit data to third party lenders.

6.      This Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C. §1331, federal question jurisdiction. This Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. §1367. Further, this Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness

2

Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. 28 U.S.C. §1332(d)(2)(A). This Court has personal jurisdiction over Defendant because Defendant has its headquarters in, and conducts substantial business in, North Carolina and throughout the United States.

7.     Venue properly lies in this district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

8.     Defendant describes itself on its website as an online lending services exchange that matches lenders with borrowers seeking mortgage, home equity, automobile, personal, and credit card loans. Consumers complete an online loan request on LendingTree's website, then LendingTree matches the consumers with up to four lenders based on various matching criteria.

9.     As part of the application process, Defendant obtains consumers' confidential information, including Social Security number, income and employment information, name, address, email address, and phone number. Defendant then analyzes the information and provides it to appropriate lenders to respond to consumers' loan requests.

10.     In or around September 2007, Plaintiff submitted a loan application containing private data to Defendant, via Defendant's website. Soon thereafter, Plaintiff received phone calls and emails from many more than four lenders soliciting her for a loan.

11.     On April 21, 2008, Defendant publicly announced the following on its website:

> Recently, LendingTree learned that several former employees may have helped a handful of mortgage lenders gain access to LendingTree's customer information by sharing confidential passwords with the lenders. . . . We promptly made several system security changes. We also brought lawsuits against those involved.

3

Based on our investigation, we understand that these mortgage lenders used the passwords to access LendingTree's customer loan request forms, normally available only to LendingTree-approved lenders, to market loans to those customers. The loan request forms contained data such as name, address, email address, telephone number, Social Security number, income and employment information. We believe these lenders accessed LendingTree's loan request forms between October 2006 and early 2008.

12. In addition to receiving unwanted solicitations from lenders, Class Members are at risk of fraud and identity theft. LendingTree advised its customers as follows:

[W]e suggest you get a free credit report. Look for any accounts you didn't open and/or inquiries from creditors that you didn't initiate. If you see anything you don't understand, contact the credit bureau. If you see anything suspicious, you may want to file a fraud alert with the bureaus.

13. LendingTree did not disclose how many customers' personal data was affected by the breach. However, according to its website, it processed more than 23 million loan requests since its inception in 1998.

14. LendingTree filed a civil complaint in the Superior Court of Orange County, California, No. 00062376, against several entities on April 21, 2008 (the "State Ct. Compl."). The complaint stated the following, in relevant part:

(a) Plaintiff [LendingTree] operates an online network that helps match consumers and lenders, with the goal of providing consumers with a competitive advantage when seeking a mortgage loan product. Plaintiff essentially provides a marketplace that connects consumers with interested lenders that submit competitive offers for these mortgage loan products.

(b) By visiting Plaintiff's website and completing a "qualification form" ("QF"), consumers interested in purchasing a mortgage loan product are able to receive "bids" from up to four lenders. The QF includes the consumer's

4

confidential information, contact information, and various other nonpublic
information. This information makes it possible for lenders to evaluate the
creditworthiness of consumers.

(c) Plaintiff utilizes a propriety system known as "Apex" to store the completed
QFs received from consumers. Consumers that have completed a QF on the
Plaintiff's website are known as "leads."

(d) Plaintiff enrolls financial services companies (including banks, thrifts, and
mortgage companies) that are interested in making mortgage loans to
consumers. These companies are known as "Network Lenders." Currently
about 300 Network Lenders participate in Plaintiff's online marketplace. . . .

(e) After a QF is completed, Plaintiff forwards the lead to roughly four Network
Lenders based on the consumer's credit data contained in the QF and the
lending criteria specified by the Network Lender. Network Lenders are then
able to quote offers to the consumer. . . . These lenders, and only these
lenders, are given authorized access to the Apex system containing the
completed QF and contact information for the lead. These lenders are
provided remote access to the LendingTree system to allow them to prepare
their offers and follow up with the leads in the future. Importantly, lenders'
access to the Apex system is limited to only the specific consumers for which
they have been sent leads. Each lender is assigned a specific user name and
password in order to log-on to and access the Apex system for the information
submitted by the lender's designated leads.

(f) Plaintiff receives various fees from Network Lenders in exchange for the leads and access to the Apex system . . .

(g) . . . Customers expect Plaintiff to ensure the security of their sensitive confidential information . . .

(h) Preventing the disclosure of customer information to unauthorized persons is of significant importance to Plaintiff and its customers.

(i) Jarod Beddingfield ("Beddingfield") was employed by [LendingTree] in various positions, including Vice President of Sales, from June 2001 until May 2007. In these positions, Beddingfield was given administrative access to the Apex system. Beddingfield's access was essential to the performance of his job duties.

(j) Beddingfield's employment at [LendingTree] was terminated on or about May 11, 2007.

(k) Upon information and belief, during his employment and since his termination Beddingfield has repeatedly . . . reveal[ed] confidential information of both [LendingTree] and its customers to competitors and other individuals not affiliated with [LendingTree].

(l) David Anderson ("Anderson") was employed by [LendingTree] in the position of Senior Vice President for New Business Development until suspended in April 2006 and subsequently terminated in June 2006. In this position, Anderson was given administrative access to the Apex system. This access was essential to the performance of his job duties.

(m) Upon information and belief, during his employment and since his termination Anderson has repeatedly . . . reveal[ed] confidential information of both [LendingTree] and its customers to competitors and other individuals not affiliated with [LendingTree].

(n) Upon information and belief, the entity defendants – Newport, Sage, Chapman, and Home Loan Consultants ("Entity Defendants") are mortgage lenders in direct competition with the Network Lenders.

(o) On information and belief, both during and after their employment with [LendingTree], Anderson and Beddingfield each used their administrative access to ascertain the user names and Apex passwords of various other Network Lenders and [LendingTree's] employees. Anderson and Beddingfield then illegally . . . distributed the user names and passwords of [LendingTree's] employees and [LendingTree's] other Network Lenders to Newport, Southern California Marketing, Chapman, and/or Home Loan Consultants.

(p) On information and belief, Newport and Southern California Marketing paid Anderson and Beddingfield for the stolen usernames and passwords necessary to access the Apex system. Newport and/or Southern California Marketing thus obtained the ability to illegally log-on to and access the Apex system and misappropriate leads and confidential information.

(q) On information and belief, in addition to using the stolen leads to contact consumers itself, Newport and/or Southern California Marketing also sold

7

certain usernames and passwords or the stolen leads to Sage, Chapman, and/or Home Loan Consultants to enable these entities to obtain unauthorized access to the Apex system and to use the information to contact the consumers to provide the loan products, resulting in damage to [LendingTree].

(r)  On information and belief, Newport and/or Southern California Marketing used illegally-obtained Apex passwords on a regular basis to download newly-submitted QFs from the Apex system. Newport then distributed the names of [LendingTree's] customers and their personal information to its loan officers, who contacted the customers directly. Newport also distributed the names of Plaintiff's customers and their personal information to Sage and other Entity Defendants . . . .

(s)  On information and belief, Chapman and Home Loan Consultants paid Anderson and Beddingfield for the stolen usernames and passwords necessary to access the Apex system. Chapman and Home Loan Consultants thus obtained the ability to illegally log-on to and access the Apex system and misappropriate leads and confidential information.

(t)  On information and belief, Chapman and Home Loan Consultants used illegally-obtained Apex passwords on a regular basis to download newly-submitted QFs from the Apex system. Chapman and Home Loan Consultants then distributed the names of [LendingTree's] consumers and their personal information to its loan officers, who contacted the customers directly.

(u)  On information and belief, the scheme resulted in hundreds of unauthorized

log-ons to the Apex system.

15.    Despite LendingTree taking the time to hire counsel and file a lawsuit on its own behalf on April 21, 2008, LendingTree failed to notify Class Members until that same date, April 21, 2008, that their personal data had been breached.  Presumably, LendingTree knew about the breach before hiring counsel to sue the unauthorized third parties.  LendingTree should have notified Class Members of the breach at that time, *i.e.*, when it first learned of the breach.  The delay in notification deprived Class Members of the opportunity to scrutinize lender communications for unauthorized contacts, monitor credit histories for misuse of personal information, and take other protective measures in response to the breach.

16.    As noted in LendingTree's state court complaint, Jarod Beddingfield and David Anderson repeatedly misappropriated confidential information both before and *after* they were terminated by LendingTree.  (State Ct. Compl. ¶¶ 34, 38.)  The fact that Beddingfield and Anderson continued to access customer data after their termination casts doubt on LendingTree's procedures to freeze Beddingfield's and Anderson's data access rights, strengthen its security procedures, and otherwise improve its data access controls after being on notice of the data breach.

17.    LendingTree noted on the Privacy Policy section of its website that it "will not share information with other lenders not disclosed to you."  It also disclosed that "only . . . authorized third-party service providers are permitted to access personal information, and they may do so only for permitted business functions."  LendingTree failed to comply with these representations.

18.    Class Members' private information has been improperly sold and/or disclosed to

9

multiple third parties by Defendant and its agents in violation of the FCRA. Defendant is responsible and liable here for the actions of its agents.

19.     Plaintiff at no time agreed to allow Defendant or its agents to disseminate her private information to unauthorized third parties.

20.     On April 21, 2008, Plaintiff received an email from LendingTree stating that her personal information was affected by the data breach.

## CLASS ACTION ALLEGATIONS

21.     This action is brought by Plaintiff Constance Spinozzi, individually and as a class action, on behalf of all persons or entities whose personal or financial information was disclosed by Defendant or its ex-employees to unauthorized third parties (the "Class"). The Class does not include Defendant or its officers, directors, agents, or employees.

22.     Class certification is appropriate under Federal Rule of Civil Procedure 23(a) and 23(b).

23.     On information and belief, the Class is comprised of thousands or millions of consumers, making joinder of such consumers impracticable. Litigation of the claims in a class context will provide substantial benefits and economies to the parties and the Court.

24.     The rights of each Class Member were violated in a similar fashion based on Defendant's uniform actions.

25.     Questions of law and fact common to the Class predominate over questions that may affect individual Class Members, including the following:

        a.      Whether Defendant or its agents disclosed or otherwise provided access to Class Members' private information to unauthorized third parties;

b.      Whether Defendant's conduct alleged herein violated the FCRA;

c.      Whether Defendant's unlawful conduct was willful, reckless, or negligent for purposes of the FCRA;

d.      Whether Defendant owed duties to Class Members to protect their personal information;

e.      Whether Defendant breached its duties it owed to Class Members;

f.      Whether Defendant failed to exercise reasonable care in supervising its employees and monitoring their access to and/or use of passwords and other information which allowed access to Class Members' private information;

g.      Whether Defendant entered into and breached implied contracts with Class Members regarding the safeguarding of their private information;

h.      Whether Class Members sustained damages, and if so, what is the proper measure of those damages; and

i.      Whether statutory damages under the FCRA, 15 U.S.C. § 1681n(a)(1)(A), are proper in this matter.

26.      Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that are antagonistic to, or that irreconcilably conflict with, the interests of the Class.

27.      Plaintiff has retained competent counsel who are experienced in class action litigation.

28.      A class action is superior to all other methods for the fair and efficient adjudication of Class Members' claims.

11

29.     Certification of a Class to resolve this dispute will reduce the possibly of repetitious litigation involving thousands or millions of Class Members.

## COUNT I

## INTENTIONAL VIOLATION OF THE FAIR CREDIT REPORTING ACT

30.     Plaintiff re-alleges paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.     The Fair Credit Reporting Act ("FCRA") was created to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commence for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §1681(b).

32.     The FCRA imposes the following duty: "Every consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 604 [15 U.S.C. § 1681b]." 15 U.S.C. § 1681e(a). Section 604, 15 U.S.C. § 1681b, sets forth various permissible purposes for the furnishing of consumer reports. LendingTree's disclosure of consumer information to unauthorized third parties did not comply with any of the permissible purposes set forth in 15 U.S.C. § 1681b.

33.     The FCRA defines "consumer reporting agency" as follows:

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of *assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

12

34. The FCRA defines "consumer report" as follows:

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency ***bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living*** which is used or expected to be used or collected in whole or in part for the purpose of serving as a ***factor in establishing the consumer's eligibility for***

(A) ***credit*** or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 604 [15 U.S.C. §1681b].

15 U.S.C. §1681a(d)(1) (emphasis added).

35. LendingTree is a "consumer reporting agency" under the FCRA. LendingTree disclosed in its state court complaint that it assembles information "that makes it possible for lenders to evaluate the ***creditworthiness*** of consumers." (State Ct. Compl. ¶ 19) (emphasis added). LendingTree also disclosed the following on the Frequently Asked Questions page of its website:

On the LendingTree network, Lenders provide to us criteria about the type of loan (for example, loan amount, whether purchase, refinance, or equity loan) and the type of loan customer (for example, state of residence or ***creditworthiness***) in which the Lender is interested. LendingTree, LLC will provide your information to up to five Lenders whose criteria match your profile.

. . . .

[I]n all cases, LendingTree pulls your ***credit report*** when you complete a loan request.

(Emphasis added.)

Thus, LendingTree assembles and/or evaluates consumer credit information (creditworthiness

13

information) and furnishes it to third party lenders.

36.     LendingTree furnishes "consumer reports" to third parties under the FCRA. Class Members provided LendingTree with their Social Security number and employment and income information, among other things. LendingTree then obtained Class Members' credit reports. Together, that information had a direct "bearing on [Class Members'] credit worthiness" and served as a "factor in establishing the consumer's eligibility for . . . credit." 15 U.S.C. §1681a(d)(1).

37.     Class Members are "consumers" as defined and construed under the FCRA, 15 U.S.C. §1681a(c).

38.     Defendant received fees for assembling consumer information.

39.     Defendant used the facilities of interstate commerce for purposes of the FCRA when it collected Class Members' private information via its website and shared that information with third parties.

40.     In conscious disregard for the rights of Class Members, Defendant willfully or recklessly failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the permissible purposes outlined in the FCRA.

41.     Defendant and its former employees obtained Class Members' private information, and sold or disseminated it to unauthorized third parties for no permissible purpose under the FCRA.

42.     Defendant is responsible and liable for its employees' actions as agents of Defendant.

43.     Defendant willfully or recklessly failed to properly: (i) supervise its employees;

14

(ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

44.     The FCRA states the following with respect to damages:

(a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000

. . . .

(B) such amount of punitive damages as the court may allow; and

(C) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

45.     Class Members have been damaged by Defendant's actions.  As a result, Class Members are entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000, as well as punitive damages, litigation costs, and attorney's fees.

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

46.     Plaintiff re-alleges paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47.     Defendant engaged in at least negligent, if not willful or reckless, conduct in violating the FCRA.

48.     In negligent disregard for the rights of Class Members, Defendant failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the

15

permissible purposes outlined in the FCRA.

49. Defendant and its former employees obtained Class Members' private information, and sold or disseminated it to unauthorized third parties for no permissible purpose under the FCRA.

50. Defendant is responsible for its employees' actions as agents of Defendant.

51. Defendant negligently failed to properly: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to consumer information.

52. The FCRA states the following with respect to damages:

(a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a).

53. Class Members have been damaged by Defendant's actions. As a result, Class Members are entitled to actual damages sustained, as well as litigation costs and attorney's fees.

## **COUNT III**

## **NEGLIGENCE**

54. Plaintiff re-alleges paragraphs 1 through 53 of the Complaint as if fully set forth herein.

16

55.     Defendant came into possession of Class Members' private information and had a duty to exercise reasonable care in safeguarding that information.

56.     Defendant owed a duty to Class Members to properly: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

57.     Defendant, through its actions, breached its duties to Class Members.

58.     Defendant's employees misappropriated consumer information for more than a year, from "between October 2006 and early 2008." According to LendingTree's state court complaint, "the scheme resulted in hundreds of unauthorized log-ons to the Apex system." (State Ct. Comp. ¶ 49.) Also, according to the state court complaint, Beddingfield and Anderson repeatedly misappropriated consumer data both before and after they were terminated from LendingTree. The length of the breach, the fact that hundreds of unauthorized log-ons were permitted, and the fact that LendingTree's former employees still had access to LendingTree's customer data even after they were terminated casts doubt on the adequacy of LendingTree's procedures to: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

59.     LendingTree's violation of the FCRA serves as further evidence of its breach of duties owed to Class Members. This constitutes negligence *per se*.

60.     Defendant also had a duty to timely disclose to Class Members that their private information had been, or was reasonably believed to have been, compromised. Defendant breached this duty. Defendant investigated the breach, hired legal counsel, and filed a complaint

17

in state court against certain third parties on April 21, 2008. Defendant did not notify Class Members about the breach until that same date, April 21, 2008. Presumably, LendingTree knew about the breach before hiring counsel to sue the unauthorized third parties. LendingTree should have notified Class Members of the breach at that time, *i.e.*, when it first learned of the breach. The delay in notification deprived Class Members of the opportunity to scrutinize lender communications for unauthorized contacts, monitor credit histories for misuse of personal information, and take other protective measures in response to the breach.

61.     The breaches of duties were reasonably foreseeable to Defendant.

62.     But for Defendant's breach of duties, Class Members' private information would not have been compromised. Class Members' private information was compromised as a direct and proximate result of Defendant's breach.

63.     Class Members suffered damages including but not limited to:

a.     out of pocket costs for credit monitoring, identity theft insurance, and similar services;

b.     anxiety;

c.     emotional distress;

d.     loss of privacy;

e.     loss of time spent: (i) obtaining and reviewing credit reports (at Defendant's suggestion); (ii) placing fraud alerts on their credit report (at Defendant's suggestion); (iii) monitoring their accounts and credit reports on an ongoing basis for unauthorized activity; (iv) scrutinizing communications from lenders; and (v) taking other protective measures in response to the breach; and

18

f.     other economic and non-economic harm.

## COUNT IV

## BREACH OF IMPLIED CONTRACT

64.     Plaintiff re-alleges paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     When entering into transactions with Defendant, and providing personal information to Defendant, Class Members entered into implied contracts with Defendant requiring Defendant to safeguard their private information.  The implied contracts were based on, *inter alia*, Defendant's Privacy Policy, which stated that only authorized third parties had access to consumers' personal information.

66.     As noted in LendingTree's state court complaint: "Customers expect [LendingTree] to ensure the security of their sensitive confidential information."  (State Ct. Compl. ¶ 25.)  Also, "[p]reventing the disclosure of customer information to unauthorized persons is of significant importance to [LendingTree] and its customers."  (State Ct. Compl. ¶ 27.)  This indicates a meeting of the minds between LendingTree and Class Members regarding data security.

67.     Defendant failed to safeguard Class Members' private information.  Defendant's actions caused Class Members' private information to be disclosed to unauthorized third parties.

68.     Because Defendant disclosed Class Members' private information to unauthorized third parties, Defendant breached its implied contract with Class Members.

69.     Class Members suffered damages including but not limited to:

a.     out of pocket costs for credit monitoring, identity theft insurance, and

19

similar services;

      b.     anxiety;

      c.     emotional distress;

      d.     loss of privacy;

      e.     loss of time spent: (i) obtaining and reviewing credit reports (at Defendant's suggestion); (ii) placing fraud alerts on their credit report (at Defendant's suggestion); (iii) monitoring their accounts and credit reports on an ongoing basis for unauthorized activity; (iv) scrutinizing communications from lenders; and (v) taking other protective measures in response to the breach; and

      f.     other economic and non-economic harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a.     Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as class counsel;

b.     Finding that Defendant willfully, recklessly, or negligently violated the FCRA;

c.     Finding that Defendant was negligent in failing to protect Class Members' private information and in failing to timely disclose the breach;

d.     Finding that Defendant entered into and breached implied contracts to safeguard Class Members' private information;

e.     Finding that Defendant is responsible for its employees' actions as agents of Defendant;

f.      Requiring that Defendant pay statutory damages of not less than $100 and not more than $1,000 under the FCRA;

g.      Requiring that Defendant pay Plaintiff's and Class Members' reasonable attorney's fees and costs of litigation;

h.      Requiring that Defendant pay punitive damages;

i.      Awarding all appropriate damages to Class Members under the common law theories alleged herein;

j.      Enjoining Defendant from actions which place Class Members at a risk of future security breaches;

k.      Awarding injunctive relief including the requirement that Defendant strengthen its data security procedures to minimize the risk of future security breaches;

l.      Awarding injunctive relief including the provision of credit monitoring, identity theft insurance, identity protection services, or similar services; and

m.      Awarding any other legal and/or equitable relief as justice requires.


Dated: May 15, 2008

Respectfully submitted,


/s/ Sam McGee_____

JACKSON & MCGEE, LLP
Gary W. Jackson, NC State Bar No. 13976
Sam McGee, NC State Bar No. 25343
521 East Blvd.
Charlotte, NC 28203
TEL: (704) 377-6680
FAX: (704) 377-6690
*Liaison Counsel for Plaintiff and the Class*

21

SHELLER, P.C.
Jamie Sheller
1528 Walnut St., 3rd Floor
Philadelphia, PA 19102
TEL: (215) 790-7300
FAX: (215) 546-0942

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Michael T. Fantini
Jon Lambiras
1622 Locust Street
Philadelphia, PA  19103
TEL: (215) 875-3000
FAX: (215) 875-4636

*Counsel for Plaintiff and the Class*
*Pro Hac Vice Admission Anticipated*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Summons and Complaint was served upon the Defendant's agent by properly depositing copies of said document, enclosed in a first class, postage paid wrapper in a post office or an official depository under the exclusive care and custody of the United States Post Office and addressed as follows:

Lending Tree, LLC
c/o National Registered Agents, Inc.
120 Penmarc Drive, Suite 118
Raleigh, North Carolina 27603

This the 15th day of May, 2008.


/s/ Sam McGee_____

JACKSON & MCGEE, LLP
Gary W. Jackson, NC State Bar No. 13976
Sam McGee, NC State Bar No. 25343
521 East Blvd.
Charlotte, NC 28203
TEL: (704) 377-6680
FAX: (704) 377-6690

*Liaison Counsel for Plaintiff and the Class*

SHELLER, P.C.
Jamie Sheller
1528 Walnut St., 3rd Floor
Philadelphia, PA 19102
TEL: (215) 790-7300
FAX: (215) 546-0942

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Michael T. Fantini
Jon Lambiras
1622 Locust Street
Philadelphia, PA 19103
TEL: (215) 875-3000
FAX: (215) 875-4636

*Counsel for Plaintiff and the Class*
*Pro Hac Vice Admission Anticipated*

23

24