UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE
No.: 3:08-cv-229-FDW
(Consolidated with 3:08-cv-247 and 3:08-cv-303)

| | |
|---|---|
| CONSTANCE SPINOZZI, on behalf of herself and all others similarly situated, | : |
| Plaintiff, | : |
| vs. | : |
| LENDINGTREE, LLC; NEWPORT LENDING CORP.; SOUTHERN CALIFORNIA MARKETING CORP.; HOME LOAN CONSULTANTS, INC.; CHAPMAN CAPITAL, INC.; and SAGE CREDIT CO., | : |
| Defendants. | : |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
LENDINGTREE, LLC'S MOTIONS TO DISMISS
UNDER RULE 12(B)(6)**

## SUMMARY OF ARGUMENT[1]

Although defendant LendingTree now seeks to compel arbitration, plaintiffs have alleged in their amended complaints that the arbitration clause at issue is both procedurally and substantively unconscionable under North Carolina law and should not be enforced. As alleged, plaintiffs were not aware of the arbitration clause when they contacted LendingTree for services through LendingTree's website, and LendingTree and its representatives never took any affirmative actions to make plaintiffs aware of the arbitration clause. Indeed, LendingTree's website was structured in such a way that plaintiffs were able to complete the entire application process and obtain LendingTree's services without ever being presented with the arbitration clause at issue.[2] Also, plaintiffs had no meaningful choice with regard to whether to be subject to the arbitration clause, and they had absolutely no bargaining power against this corporate defendant with respect to its terms. In addition, the clause contains many one-sided oppressive terms, including the imposition of prohibitive costs, a loser-pays provision relating to attorneys' fees, the exclusion of consequential and punitive damages, and a prohibition on joinder of claims and class actions. In essence, the arbitration clause makes it practically and economically

---

[1] By Order dated July 23, 2008, this Court consolidated the instant case with Carson v. LendingTree, LLC, No. 3:08-cv-247 and Mitchell v. Home Loan Center, Inc., No. 3:08-cv-303, and ordered that "all further proceedings will be docketed and filed in this action, 3:08-cv-229, only." In light of this Order, and given that defendant's motions to dismiss in the three actions are virtually identical, this opposition brief is hereby submitted on behalf of the three plaintiffs in these three actions.

[2] See Def. Br. p.3, and Exhibit A-2 attached to defendant's brief. References to "Def. Br. p___" refer to the Memorandum of Law In Support of LendingTree, LLC's Motion to Dismiss Under Rule 12(B)(6), filed on July 8, 2008 in the Spinozzi action.

malta438960-029.wpd 2

unfeasible for plaintiffs and consumers with small damages to seek any vindication of their rights. For such reasons and others, the arbitration clause is unconscionable. (Compl. ¶¶28-61).[3]

The issue of unconscionability here is squarely controlled by the 2008 decision of the Supreme Court of North Carolina in Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93 (Jan. 25, 2008). In Tillman, the Supreme Court set forth several specific factors bearing on the unconscionability of a standard arbitration clause. As demonstrated in detail below, plaintiffs' complaints contain numerous factual allegations which satisfy each and every factor set forth in Tillman.

Defendant feebly attempts to downplay the import of Tillman, and defendant completely ignores all of plaintiffs' allegations in their complaints relating to this issue. Nevertheless, Tillman represents the leading authority on North Carolina law regarding unconscionability, and, under Tillman, LendingTree's arbitration clause is unconscionable and should not be enforced. The motions to dismiss should be denied and this consolidated case should proceed in this forum.

## FACTUAL BACKGROUND

LendingTree describes itself as an online lending service that matches lenders with its customers/borrowers seeking mortgage, home equity, automobile, personal, and credit card loans. Consumers complete an online loan request on LendingTree's website, then LendingTree matches the consumer with up to four lenders based on various matching criteria. (Compl. ¶14).

As part of the application process, LendingTree obtains its customers' confidential information including their Social Security numbers, income and employment information,

---

[3] References to "Compl. ¶ ___" refer to plaintiff Constance Spinozzi's Amended Class Action Complaint filed on June 23, 2008.

malta438960-029.wpd                          3

name, address, e-mail address, and phone numbers. LendingTree then analyzes the information and provides it to appropriate lenders to respond to consumers' loan requests. (Compl. ¶15).

In 2007, plaintiff Spinozzi submitted a loan application containing private data to LendingTree, via LendingTree's website. Soon thereafter, plaintiff Spinozzi received phone calls and e-mails from many more than four lenders soliciting her for a loan. (Compl. ¶16).

On April 21, 2008, LendingTree publicly announced that:

> ...several former employees may have helped a handful of mortgage lenders gain access to LendingTree's customer information by sharing confidential passwords with the lenders....Based on our investigation, we understand that these mortgage lenders used the passwords to access LendingTree's customer loan request forms, normally available only to LendingTree-approved lenders, to market loans to those customers. The loan request forms contained data such as name, address, e-mail address, telephone number, Social Security number, income and employment information. We believe these lenders accessed LendingTree's loan request forms between October 2006 and early 2008. (Compl. ¶17).

In April, 2008, plaintiffs were informed by LendingTree that their personal information was affected by the data breach (Compl. ¶27).

As a result of LendingTree's actions, plaintiffs and Class members have received unwanted solicitations from lenders, and LendingTree notified them that they are at risk of fraud and identity theft. (Compl. ¶18).

Accordingly, as alleged, LendingTree and its agents have improperly sold and/or disclosed to multiple third parties the private information of LendingTree's customers in violation of the Fair Credit Reporting Act ("FCRA"). (Compl. ¶25). The FCRA expressly provides statutory penalties for such actions. (Compl. ¶87).

On May 15, 2008, plaintiff Spinozzi filed a class action suit against LendingTree on behalf of all persons in the United States whose private personal information was unlawfully sold

to third parties. Plaintiff filed suit in this Court because LendingTree maintains its headquarters in Charlotte, North Carolina, this is where the unlawful conduct occurred, and this is the location of the primary witnesses and evidence in the case. (Compl. ¶5).[4]

Based upon further investigation and analysis, on June 23, 2008, plaintiffs Spinozzi and Carson filed amended complaints in order to add as defendants those third parties who were involved in the improper dissemination of Class members' personal information. The amended complaints allege violations of the Fair Credit Reporting Act, negligence, breach of implied contract, invasion of privacy, tortuous interference with contract, unjust enrichment, and unfair methods of competition under N.C. Gen. Stat. §75-1.1, et. seq.[5]

Defendant LendingTree now seeks to compel plaintiffs to arbitration, and moves to dismiss this action on such basis.[6]

Regarding the arbitration clause contained in LendingTree's Terms of Use Agreement appearing on its website, as alleged, the arbitration clause is a standard boiler-plate clause, drafted by LendingTree. It is a standard form contract of adhesion. Plaintiffs were not aware of the arbitration clause when they contacted LendingTree for services through LendingTree's website, and LendingTree and its representatives never took any affirmative actions to make plaintiffs aware of the arbitration clause. Indeed, LendingTree's website did not require

---

[4] Plaintiff Carson filed her suit against LendingTree in this Court on May 30, 2008. Plaintiff Mitchell filed her suit in the District Court of Oklahoma on April 28, 2008, and it was later transferred here on June 26, 2008.

[5] Contrary to defendant's suggestion (Def. Br. p. 9 fn 3), plaintiffs Spinozzi and Carson did not add additional defendants to the case in an attempt to circumvent arbitration. Rather, they added the additional defendants because they are culpable parties here.

[6] Defendant has not challenged the merits of plaintiffs' legal claims.

malta438960-029.wpd 5

plaintiffs and consumers to click on to the link for the Terms of Use Agreement, which contains the arbitration clause, in order to obtain LendingTree's services. In fact, plaintiffs completed the entire application process and obtained LendingTree's services without ever seeing the arbitration clause at issue here. Also, plaintiffs had no meaningful choice with regard to whether to be subject to the arbitration clause, and they had absolutely no bargaining power with respect to its terms. (Compl. ¶33-37). Accordingly, despite defendant's assertions (Def. Br. pp. 1, 3, 6, 12, 14), plaintiffs never agreed to the arbitration clause, and, in fact, they were not even aware of it when they sought LendingTree's services.

## ARGUMENT

### A. The Federal Arbitration Act Triggers Application Of State Law On Issues of Unconscionability

LendingTree points to Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., as the focal point of analysis here. (Def. Br. p. 5). Section 2 provides, in part:

> A written provision of. . .a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . .shall be valid, irrevocable, and enforceable, **save upon such grounds as exists at law or in equity for the revocation of any contract.**

9 U.S.C. §2 (emphasis added).

Under the last clause of that provision, in determining whether a party is bound by an arbitration agreement, a federal court is to look to state contract law principles. See Ziegler v. Whale Securities Co., L.P., 786 F. Supp. 739, 741-742 (N.D. Ind. 1992); Wren Distributors Inc. v. Phone-Mate Inc., 600 F. Supp. 1576, 1579-1580 (E.D.N.Y. 1985). In this vein, the Court may consider generally applicable state law contract defenses, such as unconscionability, in determining whether an arbitration provision is valid, and such consideration does not contravene

the Federal Arbitration Act. See Doctors' Associates, Inc. v. Casarotto, 517 U.S. 681, 685-687 (1996); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002); Omstead v. Dell, Inc., 473 F. Supp. 2d 1018, 1022 (N.D. Cal. 2007); Toledano v. O'Connor, 501 F. Supp. 2d 127, 138 (D.D.C. 2007); Carideo v. Dell, Inc., 520 F. Supp. 2d 1241, 1244 (W.D. Wash. 2007); Bragg v. Linden Research, Inc., 487 F. Supp. 2d 593, 605 (E.D. Pa. 2007); Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 542 (E.D. Pa. 2006); Hurlbut v. Gantshar, 674 F. Supp. 385, 389 (D. Mass. 1987).

Thus, under the FAA, this Court can enforce plaintiffs' defense of unconscionability against LendingTree's arbitration clause as determined by North Carolina law.

### B. Under North Carolina Law, LendingTree's Arbitration Clause Is Unconscionable

Under North Carolina law, as recently pronounced by the North Carolina Supreme Court in Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93 (Jan. 25, 2008), LendingTree's arbitration clause is procedurally and substantively unconscionable and should not be enforced.

Tillman has been decided by North Carolina's highest state court, it represents the most recent decision on unconscionability (having been decided this year in 2008), and it was based upon the Supreme Court's survey of existing legal precedent in North Carolina. Thus, Tillman represents the leading authority for this Court to look to when deciding the unconscionability issue here.

In Tillman, the plaintiffs/borrowers obtained loans from the defendants/lenders. The parties' loan agreement was drafted by the defendant lenders, and it contained a standard arbitration clause which was set forth in clear bold highlighted language. The plaintiffs later

sued the defendants for fraud, bad faith, and other claims in connection with the loan agreement. The defendants then sought to compel arbitration under the arbitration clause. The trial court denied the defendants' motion to arbitrate, but the Court of Appeals reversed. On further appeal to the Supreme Court of North Carolina, the Supreme Court addressed the validity of the standard arbitration clause in the consumer loan agreement, and held that the clause was unconscionable and unenforceable.

In its ruling, the Supreme Court set forth broad general principles for determining when contracts, including those with standard arbitration clauses, may be deemed to be unconscionable. Set forth immediately below are the findings of the <u>Tillman</u> court, along with the corresponding allegations in plaintiff Spinozzi's Complaint demonstrating that each <u>Tillman</u> factor is met in the present case.[7]

---

[7] The <u>Tillman</u> court did not hold that each and every factor had to be met in order to establish unconscionability.

malta438960-029.wpd 8

More specifically, in finding the arbitration clause at issue to be <u>procedurally</u> unconscionable,[8] the <u>Tillman</u> court found that:

- the arbitration clause was not brought to the plaintiffs' personal attention by the defendant when the plaintiffs signed the loan documents,[9] (<u>See</u> Compl. ¶¶ 34, 35).[10]

- the arbitration clause is a standard boiler-plate clause which defendants include in all loan documents, (<u>See</u> Compl. ¶¶ 33, 41).

- there was no opportunity for the plaintiffs to negotiate the terms of the arbitration clause, and the defendant would not have so negotiated, (<u>See</u> Compl. ¶¶ 36-40).

- there was unequal bargaining power between the parties in that the plaintiffs were relatively unsophisticated consumers contracting with corporate defendants who

---

[8] <u>See</u> <u>Tillman</u>, 362 N.C. at 97, 103.

[9] In <u>Tillman</u>, the arbitration provision was set off in a separate box in bold highlighted letters, it comprised a portion of two pages, and the plaintiffs signed those pages. Also, the loan closing was not the last opportunity that the plaintiffs had to review the documents and decline the loans. Contained within the arbitration provision was the borrower's right to rescind the loan within three business days. So, even if the plaintiffs were rushed through the closing, they had three business days to read the documents and rescind the loans if desired. Nevertheless, the <u>Tillman</u> court placed greater significance on the facts that the defendants instructed the plaintiffs where to sign the documents, and defendants made no specific mention of the arbitration clause at the loan closing. 362 N.C. at 103, 120-121.

[10] In the present case, when plaintiffs and consumers visited LendingTree's website, they were confronted with numerous attached links, including links to: Privacy Policy, Lending Disclosures, Affiliated Business Disclosures, and Terms of Use. The face of the application screen did not indicate that any of these four links contained an arbitration clause. Each link contains a substantial amount of legalese, is single-spaced, and very lengthy. Significantly, plaintiffs and consumers were not required to click on to the Terms of Use Agreement, which contains the arbitration clause, in order to obtain LendingTree's services. In other words, the website was structured in such a way that plaintiffs were able to complete the entire application process and obtain LendingTree's services without ever even seeing the arbitration clause at issue. (<u>See</u> Def. Br. p. 3, and Ex. A-2 attached thereto). For such reasons, as alleged, plaintiffs here were not aware of the arbitration clause when they contacted LendingTree for its services. In addition, no one from LendingTree ever took any action to bring this clause to their attention. (Compl. ¶¶ 34-35).

drafted the arbitration clause and included it as boiler-plate language in all of their loan agreements, (See Compl. ¶¶ 37-41).

The Tillman court also found the arbitration clause to be <u>substantively</u> unconscionable,[11] based on the following facts:

- the costs of arbitration are prohibitively high, and the plaintiffs are unable to bear such costs, (See Compl. ¶¶ 42-46).

- the costs of arbitration are not present for plaintiffs when bringing a class action suit, (See Compl. ¶¶47-50, 56).

- the plaintiffs have relatively small damages, (See Compl. ¶ 52).

- because plaintiff's damages are so low, it is unlikely any attorney would be willing to represent them in arbitration, (See Compl. ¶¶ 53-55).

- the above point is especially true where the arbitration clause prohibits the joinder of claims and class actions, thus preventing the plaintiffs or attorneys from sharing the risks or costs of the case, (See Compl. ¶¶51-55).

- the arbitration clause's loser-pay provision, and the prohibition on joinder of claims and class actions, create a barrier to pursuing arbitration that is substantially greater than that present in litigation, (See Compl. ¶¶56-59).

- the arbitration clause prohibits joinder of claims and class actions, thereby contributing to the financial inaccessibility of the arbitration forum, i.e., it deters plaintiffs and attorneys from bringing cases with low damage amounts in the face of high costs which cannot be shared, and it contributes to the one-sidedness of the clause in that it denies rights to the plaintiffs only. (See Compl. ¶¶ 51-60).

For such reasons, the Supreme Court in Tillman reversed the Court of Appeals and struck down the arbitration clause as unconscionable and therefore unenforceable. Id at 103-109.

Significantly, the arbitration clause in Tillman is substantially similar to the arbitration clause contained in LendingTree's Terms of Use Agreement, and thus, LendingTree's clause

---

[11] See Tillman, 362 N.C. at 104-109.

should be struck down for the same reasons. More specifically, both LendingTree's arbitration clause and the clause at issue in Tillman were standard boiler-plate clauses drafted by the defendant; both were set forth in the respective agreements in some highlighted manner; both failed to provide for any negotiation by the parties over their terms; both incorporated the rules of the American Arbitration Association; both imposed the costs of arbitration beyond the first day of hearing on the non-prevailing party; both contained some form of a loser-pay provision; and both prohibited the joinder of claims and class actions. Tillman, 362 N.C. at 95-98, 121; Compl. ¶¶28-60. In addition, LendingTree's arbitration clause is even more egregious than the clause in Tillman in that: it allows only for the award of actual compensatory damages; it specifically excludes any award for consequential or punitive damages and thereby eviscerates plaintiffs' statutory rights to statutory penalties under the FCRA, which is the main legal claim here; and it requires the losing party to pay the prevailing party's attorneys' fees. (Compl. ¶29).

For all of the reasons above, and given that LendingTree's arbitration clause contains the same unconscionable provisions as the clause in Tillman, and given the unequal bargaining power between plaintiffs and LendingTree, LendingTree's clause should likewise be stricken.[12]

It is no wonder then that defendant LendingTree has feebly attempted to downplay the import of Tillman. (Def. Br. pp. 14, 17). Yet, in its brief, defendant does not cite any authority which supercedes Tillman. All of the cases which defendant relies on were decided before Tillman, and they do not represent the current state of the law. (Def. Br. pp. 10-14). Tellingly,

---

[12] In addition to the above, it would also be very inefficient and costly for each plaintiff to litigate his claims against LendingTree in arbitration and separately to litigate the claims against the other defendants in federal court, particularly where all defendants' unlawful conduct stems from a single event and where overlapping proof and witnesses will be used against all.

malta438960-029.wpd                                     11

the two North Carolina Supreme Court cases which defendant cites were decided in 1944 and 1959. (Def. Br. p. 12). Tillman, a 2008 decision, clearly is the controlling legal authority here.[13]

Indeed, defendant's assertion that Tillman should be narrowly interpreted must be rejected. (Def. Br. 17). It is clear from the Tillman opinion itself that the Supreme Court surveyed existing case law in the Fourth Circuit and North Carolina state courts when rendering its decision. See Tillman, 362 N.C. at 101-107. In fact, the Tillman decision is based upon legal principles surrounding unconscionability that are well-established under North Carolina law. See, e.g., Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) ("equity may require invalidation of an arbitration agreement that is unconscionable," citing to one-sidedness and unfairness); Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549, 556 (4th Cir. 2001) (court focused on cost differential between arbitration and litigation); Brenner v. The Little Red School Home Limited, 302 N.C. 207, 213 (1981) (inequality of bargaining and oppressive terms result in unconscionability of agreement); Rite Color Chemical Company, Inc. v. The Velvet Textile Company, 105 N.C. App. 14, 20 (1992) (court cites procedural and substantive elements of unconscionability, including unequal bargaining power, lack of meaningful choice, and oppressive one-sided terms); Martin v. Sheffer, 102 N.C. App. 802, 805 (1991) (court inquires into procedural unconscionability – lack of meaningful choice, and substantive unconscionability – one-sided terms). Thus, Tillman represents the most recent, leading pronouncement on the law of unconscionability in North Carolina.

---

[13] Just recently, on May 6, 2008, the Court of Appeals of North Carolina remanded a case to the Superior Court with instructions to follow the ruling of Tillman. See Kucan v. Advance America, 660 S.E. 2d 98 (N.C. Ct. App. 2008).

malta438960-029.wpd 12

On the issue of costs, defendant asserts that the costs of arbitration are not so prohibitive and can reasonably be borne by consumers. (Def. Br. pp. 15-17). To the contrary, plaintiffs have alleged that the costs of arbitration are prohibitively high. Those costs may include a case service fee, arbitrators' fees, room rental fees, court reporter fees, lost wages, travel expenses such as airfare and hotel costs, plaintiffs' attorney fees, and LendingTree's attorneys' fees in the event LendingTree prevails in the matter.[14] As alleged, plaintiffs have limited financial resources and would be unable or unwilling to bear those high costs. In addition, in light of the prohibition on joinder of claims and class actions, those costs cannot be shared with other litigants. In light of plaintiffs' relatively small individual damage amounts, it is economically unfeasible to pursue their claims in arbitration given these costs, and it is unlikely any attorney would represent them. (Compl. ¶¶ 28-61). At this pleading stage of the case, these allegations are to be accepted as true and all inferences are to be drawn in plaintiffs' favor. See Lowe v. Spears, 2007 U.S. App. Lexis 29488 at *5 (4th Cir. 2007); Dempsey v. Harrison, 387 F. Supp. 2d 558, 560 (E.D.N.C. 2005).

Indeed, defendant does not point to any rule or agreement which limits the total cost which plaintiffs may have to bear in arbitration. The supposed cap on the arbitrator's fees cited by defendant (Def. Br. p. 16) has no application to all the other costs necessarily incurred in arbitration, and it certainly has no application to the requirement in LendingTree's arbitration clause that the non-prevailing party pay for the prevailing party's attorney fees, which may be thousands of dollars or more. Moreover, although LendingTree now says that it may advance

---

[14] In Tillman, the trial court found that: the compensation rates for AAA arbitrators in North Carolina range from $500 to $2,380 per day; the average daily rate of AAA arbitrator's compensation in North Carolina is $1,225; and the average hourly rate for attorneys working on matters like this is between $150 to $250 per hour. Id. at 98.

malta438960-029.wpd 13

some of the costs pursuant to AAA rules, it also admits that these costs may later be imposed on plaintiffs and consumers as part of an arbitration award. (Def. Br. p. 16). It also cites to an AAA cost waiver rule for parties whose income is 200% below the federal poverty guidelines (Def. Br. p. 16), but such a rule provides no relief to plaintiffs here. In any event, under the law, defendant cannot overcome the unconscionability of its arbitration clause by relying on such rules. See Tillman, where the court rejected similar arguments made by the defendant lenders there, stating that the defendants cannot rewrite an illegal or unconscionable contract after the fact. 362 N.C. at 106 (collecting cases, including Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 676 (6th Cir. 2003) ("In considering the ability of plaintiffs to pay arbitration costs under an arbitration agreement, reviewing courts should not consider after-the-fact offers by employers to pay the plaintiffs' share of the arbitration costs where the agreement itself provides that the plaintiff is liable, at least potentially, for arbitration fees and costs.")).[15]

In short, here, the costs of arbitration are prohibitive and deter a vindication of rights to any aggrieved consumer with damages of a few hundred dollars or less. Thus, the costs of arbitration, along with all the other factors mentioned above, render LendingTree's arbitration clause unconscionable. See Tillman, 362 N.C. at 98-108.

---

[15] See also Murray, 289 F.3d at 304 ("The arbitration agreement is unenforceable as written and [the union] may not rewrite the arbitration clause and adhere to unwritten standards on a case-by-case basis in order to claim that it is an acceptable one."); Kinkel v. Cingular Wireless, LLC, 857 N.E.2d 250, 259 (Ill. 2006) ("[A] defendant's after-the-fact offer to pay the costs of arbitration should not be allowed to preclude consideration of whether the original arbitration clause is unconscionable.").

malta438960-029.wpd                    14

### C. There Was No Agreement To Arbitrate

There was no agreement between the parties to submit disputes to arbitration. Throughout its brief, LendingTree falsely asserts that plaintiffs agreed to the arbitration clause (Def. Br. pp. 1-3, 6-7, 12-14), and it states that the Court should therefore determine that an agreement to arbitrate exists. (Def. Br. p. 5).

As alleged, and as discussed in more detail above, plaintiffs were not aware of the arbitration clause when they sought LendingTree's services, and LendingTree and its representatives never took any affirmative actions to make plaintiffs aware of the clause. (Compl. ¶¶ 34-37). A fundamental principle of contract law is that there must be a "meeting of the minds" in order to form a contract. See Cole v. Champion Enterprises, Inc., 496 F. Supp. 2d 613, 621 (M.D.N.C. 2007) ("...to be enforceable a contract must contain an expression of mutual assent, or a meeting of the minds"). Here, this basic element is lacking, and thus, the first prong of the Mitsubishi Motors analysis, cited by defendant, is not met. (Def. Br. pp. 5-6). In short, there was no agreement to arbitrate.

Moreover, LendingTree itself breached a material term of its own Terms of Use Agreement when it disseminated customer information to third-party entities not authorized by the agreement. (Compl. ¶¶109-114). Thus, as a breaching party, LendingTree cannot seek to enforce the Terms of Use Agreement, or the arbitration clause contained therein. See United States v. Penn Foundry & Mfg. Co. Inc., 337 U.S. 198, 199, 210 (1949).

In addition, contrary to defendant's assertion, by filing suit in North Carolina, plaintiffs Spinozzi and Carson have not conceded that the arbitration clause governs. (Def. Br. pp. 6-7). Defendant argues that plaintiffs have abided by the choice-of-law provision in the arbitration

clause by filing suit in North Carolina, and that therefore they cannot selectively choose which provisions control and which do not. (Def. Br. pp. 6-7). Defendant is mistaken.

Plaintiffs Spinozzi and Carson filed suit in North Carolina because LendingTree is headquartered in Charlotte, North Carolina, that is where the unlawful conduct surrounding the security breach occurred, and that is where the witnesses and evidence are located. Having brought suit in North Carolina, they naturally asserted some legal claims under North Carolina law. Their choice of forum was thus based on the physical location of LendingTree's headquarters and the facts of this case, and not on the choice-of-law provisions appearing in LendingTree's arbitration clause.[16]

Accordingly, plaintiffs' filing of this suit in this forum cannot be deemed to be any concession by plaintiffs that the arbitration clause governs here.

### D. The FAA Does Not Preempt State Law On Unconscionability

Finally, defendant inaccurately suggests that Tillman may be preempted by the FAA (Def. Br. pp. 17-18). As discussed above, Section 2 of the FAA contains an express provision which triggers the application of state law when determining the validity of an arbitration clause. As Tillman represents the current state of North Carolina law on the unconscionability of contracts generally, there is no preemption. Defendant itself seems to concede this point in footnote 11 of its brief.

---

[16] These reasons also formed the bases of plaintiff Mitchell's decision to transfer her case to this Court. Although plaintiff Mitchell has cited the choice of law provision in some of her motion papers, she has never conceded that it or any other portion of the Terms of Use Agreement is valid or enforceable.

malta438960-029.wpd 16

## CONCLUSION

For all of the foregoing reasons, defendant's Motions to Dismiss should be denied in their entirety.

Dated: August 6, 2008    Respectfully submitted,

By /s/ Gary W. Jackson
Gary W. Jackson, NC State Bar No. 13976
Sam McGee, NC State Bar No. 25343
JACKSON & MCGEE, LLP
521 East Boulevard
Charlotte, NC 28203
Tel: (704) 377-6680
Fax: (704) 377-6690

*Liaison Counsel for Plaintiffs and the Class*

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Michael T. Fantini
Jon Lambiras
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4636
*Pro hac admission*

SHELLER, P.C.
Jamie L. Sheller
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942
*Pro hac admission*

*Counsel for Plaintiffs Spinozzi and Carson and the Class*

GRIFFIN, REYNOLDS & ASSOCIATES
Billy D. Griffin
416 SW 79th Street, Suite 200
Oklahoma City, OK 73139
Tel: (405) 721-9500
Fax: (405) 721-9503

*Counsel for Plaintiff Mitchell*

CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2008, I served counsel for defendant LendingTree, LLC listed below with the foregoing Memorandum by regular U.S. mail, postage prepaid:

>Robert E. Harrington
>Robinson, Bradshaw & Hinson, P.A.
>101 North Tryon Street, Suite 1900
>Charlotte, NC 28246-1900

>Mark. S. Melodia
>Reed Smith, LLP
>Princeton Forrestal Village
>136 Main Street
>Princeton, NJ 08540

/s/Gary W. Jackson

malta438960-029.wpd